UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DAVID LEE NICHOLS, SR.,

    Plaintiff,

v.                                                Case No:   6:14-cv-928-Orl-37TBS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## REPORT AND RECOMMENDATION

The Plaintiff brings this action pursuant to the Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for disability insurance benefits under the Act.

I have reviewed the administrative law judge's ("ALJ") decision, the exhibits, the administrative record, the transcript of the hearing, and the joint memorandum submitted by the parties.   For the reasons that follow, I respectfully recommend that the Commissioner's final decision in this case be **affirmed**, pursuant to sentence four of 42 U.S.C. § 405(g).

### Background[1]

Plaintiff was born November 18, 1960 (Tr. 180).   He has a limited education and past work as a delivery driver, overhead door installer, stocker, and sales representative (Tr. 21).   He has earned a minimal income since 2006 (Tr. 195).   On August 21, 2010 Plaintiff protectively filed an application for a period of disability and Social Security disability

---

[1] This section comes from the parties' joint memorandum filed on January 23, 2015.   See (Doc. 14).

insurance benefits, alleging an onset date of August 21, 2009 (Tr. 180-181, 211).  His claim was denied initially and on reconsideration (Tr. 85-89, 92-93).  Plaintiff requested an administrative hearing which was held on November 6, 2012 (Tr. 24-69, 95).  On December 5, 2012, the ALJ found Plaintiff not disabled through March 31, 2011, the date his insured status expired i.e., his date last insured, and issued a notice of decision unfavorable (Tr. 10-23).  On December 13, 2012 Plaintiff filed a request for review of the hearing decision/order (Tr. 7-9).  On April 25, 2014, the Commissioner's Appeals Council denied the request for review (Tr. 1-6).  On June 16, 2014 Plaintiff filed his complaint asking this Court to reverse the Commissioner's decision and remand the case for an award of benefits, or in the alternative for a de novo hearing (Doc. 1).

## The ALJ's Decision[2]

Plaintiff's insured status expired March 31, 2011, and therefore, to qualify for benefits, Plaintiff must establish disability on or before that date (Tr. 13).  After a careful review of the record, the ALJ found Plaintiff had severe impairments consisting of disorders of the spine and knees, hypertension, affective disorder, chronic obstructive pulmonary disease, and anxiety, but that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment (Tr. 15).  The ALJ then determined that Plaintiff had the residual functional capacity to perform light work as defined in C.F.R. § 404.1567(b), except Plaintiff (1) required an option to alternate sitting and standing, (2) must avoid ladders, unprotected heights, operation of heavy, moving machinery, concentrated exposure to dust, fumes, or gases, and operation of foot controls and push/pull arm controls, (3) could only occasionally bend, crouch, kneel, stoop, squat, and crawl, (4) was limited to simple tasks, and (5) required a low-stress job that did not require production lines (Tr. 17).  Based on Plaintiff's residual functional capacity and testimony from a vocational expert, the ALJ found

---

[2] See n.1, supra.

that Plaintiff could perform other work that existed in significant numbers in the national economy (Tr. 22, 58-60).   Accordingly, the ALJ determined that Plaintiff was not disabled through his March 31, 2011 date last insured.

## Standard of Review

The scope of the Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the ALJ's findings are supported by substantial evidence.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004).   The Commissioner's findings of fact are conclusive if supported by substantial evidence.   42 U.S.C. § 405(g).   Substantial evidence is "more than a scintilla but less than a preponderance.   It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion."   Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).

When the Commissioner's decision is supported by substantial evidence the district court will affirm even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision.   Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The district court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]"   Id.   "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." Foote, 67 F.3d 1533, 1560 (11th Cir. 1995) (per curiam); accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine the reasonableness of the factual findings).

## Discussion

A. The ALJ Applied the Correct Legal Standard to Dr. Kollmer's Opinion

Dr. Charles E. Kollmer is a consultative examiner who completed a Physical

Residual Functional Capacity Questionnaire for Plaintiff on February 14, 2012 (Tr. 766-770).  Dr. Kollmer opined that Plaintiff could sit for one hour at a time and stand for 15-20 minutes (Tr. 767-68).  The doctor concluded that in an 8 hour work day, Plaintiff could stand and walk for less than two hours and sit for a total of 4 hours (Tr. 768).  Dr. Kollmer also opined that Plaintiff would be absent, on average, 4 days per month (Id.).  Dr. Kollmer reported that Plaintiff's symptoms and limitations have existed since February 2010 (Tr. 770).

Plaintiff argues that Dr. Kollmer identified several limitations that would impact his ability to work that existed since February 2010 that were not considered by the ALJ (Id. at 15).  Plaintiff complains that the ALJ failed to weigh or even mention Dr. Kollmer's medical opinion (Doc. 14 at 14).  And, Plaintiff argues that Dr. Kollmer's opinion is important to his disability claim because "[a]t the hearing, the vocational expert testified that if a person was unable to work eight hours a day then they would not be able to engage in competitive work activity (Id. at 16).  Defendant maintains that the ALJ did not err because Dr. Kollmer's opinion was based on a single physical examination conducted in February 2012, nearly eleven months after Plaintiff's date last insured and thus, was outside the relevant period of the ALJ's analysis (Doc. 14 at 19-20).

In Winschel, the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor.  631 F.3d at 1178-79 (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)); see Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987); see also McCloud v. Barnhart, 166 F. App'x 410, 418-19 (11th Cir. 2006) (court found that the ALJ failed to explain the

weight he gave a consulting physician's report and stated that while the ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion," the ALJ is "required to state with particularity the weight he gives to different medical opinions and the reasons why."); Davis v. Barnhart, 186 F. App'x 965, 967 (11th Cir. 2006) ("The ALJ must state with particularity the weight given different medical opinions and the reasons for doing so, and the failure to do so is reversible error.  Generally, the opinions of examining physicians are given more weight than non-examining, treating more than non-treating, and specialists on issues within their areas of expertise more weight than non-specialists.") (internal citations omitted).  When considering the opinion of a consultative examiner like Dr. Kollmer the ALJ is required to consider the medical source in its entirety.  Webster v. Barnhart, 343 F. Supp. 2d 1085 (N.D. Ala. 2004) (court reversed and remanded, in part, because "[t]he ALJ failed to include the entire opinion of [the] consultant [physician] which specifically stated plaintiff's ability to lift, carry, and manipulate small objects.").

To establish a basis for a disability finding, a plaintiff "must prove that her disability existed prior to the end of her insured status period, and after insured status is lost, a claim will be denied despite her disability."  Hughes v. Comm'r. Soc. Sec., 486 F. App'x 11, 13 (11th Cir. 2012) (citing Demandre v. Califano, 591 F.2d 1088, 1090-91 (5th Cir. 1979)); Mason v. Comm'r Soc. Sec., 430 F. App'x 830, 832 (11th Cir. 2011) ("[disability insurance benefit] claimants must show that they were disabled on or before their last-insured date.").  There is no firmly established requirement that "the ALJ specifically refer to every piece of evidence in his decision ..." Hughes, 486 F. App'x at 13 (citing Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005)).  Nevertheless, the ALJ may "consider the totality of the evidence to the extent it 'bears upon the severity of the claimant's condition before the expiration of his or her insured status.'"  Cromwell v. Colvin, No.

8:13-CV-846-T-27MAP, 2014 U.S. Dist. LEXIS 104826, at *14 (M.D. Fla. July 14, 2014); Ward v. Astrue, No. 3:00-cv-1137-J-HTS, 2008 U.S. Dist. LEXIS 37851, at *11 (M.D. Fla. May 8, 2008) ("Evidence post-dating an individual's insured status may be relevant and properly considered if it bears upon the severity of the claimant's condition before the expiration of his or her insured status.").

The issue before the Court is whether the ALJ committed reversible error by failing to discuss Dr. Kollmer's February 2012 opinion in his written decision. I conclude that the ALJ did not commit reversible error. The ALJ considered all the relevant evidence and determined that "[n]one of the claimant's physicians enumerated any physical work-related limitations prior to his date last insured of March 31, 2011." (Tr. 19). The ALJ wrote that "[b]y September 2010, the claimant reported satisfactory pain relief with current medications with no side effects." (Tr. 20). The ALJ observed that "[b]y November 2010, [Plaintiff] reported improving symptoms in his knees after his surgery." (Id.). The ALJ also noted that although "[t]he evidence does indicated [sic] that the claimant's knee problems worsened after the date last insured and he is scheduled for total knee replacement," "[h]e did not require an assistive device for ambulation prior to his date last insured." (Tr. 20). "[P]rior to his date last insured, [Plaintiff's] symptoms were improving and he was more functional ..." (Id.). The ALJ's conclusions are supported by the record.

On January 28, 2010, physician Youssef W. Guergues examined Plaintiff and found that he had no deformity of the lumbar spine and was not in acute distress (Tr. 374-75). The doctor also determined that Plaintiff had no signs of intraarticular effusion in his knees (Tr. 375). On February 4, 2010, Dr. Guergues did not identify any new findings and performed a steroid injection procedure on Plaintiff (Tr. 377). Two weeks later, Dr. Guergues found that Plaintiff's condition had improved after the steroid injection (Tr. 378). Plaintiff reported continued improvement with repeated treatments and greater

functionality by May 3, 2010 (Tr. 380-383).   Plaintiff presented to the emergency room on September 8, 2010 complaining of knee pain but, he advised the emergency room doctor that he had run out of his post-surgery pain medication (Tr. 388).   A reasonable inference can be drawn that if Plaintiff had his medication, his pain would be controlled. On November 29, 2010, Dr. Telesh noted that Plaintiff's symptoms were improving (Tr. 468).

Plaintiff's medical records do not support Dr. Kollmer's opinion that Plaintiff's work limitations existed in February 2010 and Plaintiff has not directed the Court's attention to any contrary evidence.   Plaintiff has also not cited any legal authority to establish that the ALJ erred by failing to consider a medical opinion that was created nearly eleven months after his date last insured.   See Koppers v. Colvin, No. 12 CV 3993, 2013 U.S. Dist. LEXIS 122767, at *38 (N.D. Ill. Aug. 28, 2013).   Therefore, I respectfully recommend that the district judge affirm the ALJ's ruling on this issue.

B.   The ALJ Properly Found at Step 2 that Plaintiff's Diagnoses Were Not Severe

Plaintiff argues that the ALJ erred by failing to consider the limitations and impairments caused by his obesity and by failing to "even mention obesity when determining [his] severe impairments."   (Doc. 14 at 22, 24).   Plaintiff fails to articulate precisely what additional limitations were caused by his obesity.   Instead, he simply states that three physicians – Drs. Johnson, Telesh, and McCollum – diagnosed him with obesity (Id. at 21-22).   Plaintiff notes that the ALJ determined that he had a severe back impairment and a severe lung impairment and invites the Court to surmise that these ailments would generally be made worse by the additional weight of obesity (Id. at 22). Then, Plaintiff advises the Court that "[o]besity causes more fat in the knees and puts more weight on the knees."   (Id.).

The ALJ's failure to consider limitations from Plaintiff's obesity does not rise to the

level of reversible error unless the record contains evidence showing that the obesity diagnosis reduced Plaintiff's functional capacity or otherwise affected his ability to perform work related activities.   See Wind v. Barnhart, 133 F. App'x 684, 690-91 (11th Cir. 2005).   Because there is no such evidence in the record I find that any error committed by the ALJ in failing to consider limitations caused by Plaintiff's obesity is harmless.

In 2008, Dr. McCollum attributed Plaintiff's chronic knee problems to "osteoartitis related to fractures and injuries in the past," namely, a vehicular accident in 1970 (Tr. 309-10).   Despite noting that Plaintiff was moderately obese in 2005, in 2006, Dr. Johnson opined that Plaintiff's back pain was due to injuries sustained during a physical altercation when he was pushed up against a wall by another individual (Tr. 311, 314). In 2000, Dr. Linda Maynard attributed Plaintiff's back and knee pain to injuries sustained in a past vehicular accident (Tr. 326).   In June, July, August, and September 2010, Dr. Guergues made the following treatment notes:

> The patient is a 49 year old male who presents with chronic lumbar back pain.   Symptoms are located in the low back. The pain radiates to the left lower leg and right lower leg. The patient describes the pain as throbbing.   Onset was gradual years ago.   The patient describes symptoms as mild and improving. Patient came today reporting satisfactory pain relief by using current meds with no side effects. The patient is more functional now.

(Tr. 358, 360, 363, 368).   It is true that Dr. Telesh said Plaintiff's obesity was an "active problem," but he merely listed it among 25 other active problems associated with Plaintiff's condition and neither incorporated it into his analysis of Plaintiff's conditions and limitations nor considered it when rendering his professional assessment or determining Plaintiff's treatment plan (Tr. 399, 416, 468, 473-74, 477-78, 491, 500, 505, 510, 595). The record does not contain evidence demonstrating that Plaintiff's obesity reduced his

functional capacity as required by Wind.³   Therefore, I respectfully recommend that the district judge affirm the ALJ's ruling in this regard and find that the ALJ committed no more than harmless error.

### C. The ALJ Properly Considered the Side Effects of Plaintiff's Medication

Plaintiff argues that the ALJ erred by rejecting the severity of his medication side effects (Doc. 14 at 26-28).   Specifically, Plaintiff argues that the ALJ's determination that "there is no indication that the claimant has any medication side effects that would affect his ability to work" is inconsistent with the ALJ's finding that "narcotic medication results in some concentration deficits."   (Id. at 27).   Plaintiff also argues that his hearing testimony as well as evidence from multiple doctors shows that his medication causes "side effects like severe dizziness, drowsiness, constipation, upset stomach, vomiting, headaches, tiredness, nervousness, and nausea."   (Id. at 28).   Plaintiff fails to cite any legal authority to support this argument.

When the ALJ made Plaintiff's residual functional capacity determination the ALJ noted Plaintiff's testimony that he experienced medication side effects, but ultimately found that Plaintiff's complaints were not fully credible.   Still, Plaintiff's residual functional capacity assessment limits Plaintiff to simple tasks and low-stress work that does not require production lines.

The vast majority of "record evidence" Plaintiff does cite was generated after his date last insured (Doc. 14 at 26-27) (Tr. 637, 711, 724, 747, 750, 754, 774, 777, 783, 785, 794, 803, 871).   Of the remaining medical records, two show Plaintiff reported constipation as an adverse effect in April and September 2011 (Tr. 637, 747).   However, the April report also states that "[n]o adverse effects were noted," and the report for

---

³ Wind v. Barnhart, 133 F. App'x 684, 690-91 (11th Cir. 2005)

September says the adverse effects were "tolerable." (Id.).   The remaining record shows that Plaintiff reported mild dizziness in March 2011 but he specifically denied that he was experiencing side effects from medication at that time (Tr. 650-51).

Plaintiff's argument relies on an "information guide" provided by one of his physicians that discusses the general side effects of his insomnia medication (Id. at 27) (citing Tr. 764).   Plaintiff also relies on prescription sheets that identify potential side effects of some of his medications (TR. 764).   Simply presenting information guides and prescription sheets with general lists of potential side effects does not establish that Plaintiff actually experienced the side effects.

Therefore, the ALJ did not err by failing to consider the information guide. See Werner v. Comm'r Soc. Sec., 421 F. App'x. 935, 938 (11th Cir. 2011).   I find that Plaintiff has not demonstrated that his medication side effects produced limitations greater than those already accounted for by the ALJ.[4]   For these reasons I respectfully recommend that the district court affirm the ALJ's decision in this regard.

### Recommendation

Upon consideration of the foregoing, I respectfully recommend that:

1. The Commissioner's final decision in this case be **AFFIRMED**

2. The Clerk be directed to enter judgment accordingly and **CLOSE** the file.

Specific written objections to this report and recommendation may be filed in accordance with 28 U.S.C. § 636, and M.D. FLA. R. 6.02, within fourteen (14) days after service of this report and recommendation.   Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking factual findings on appeal.

---

[4] Plaintiff's residual functional capacity reflects the ALJ's determination that Plaintiff had some limitations due to "his combination of mental impairments and effects of narcotic medications." (Tr. 21).

- 10 -

**RESPECTFULLY RECOMMENDED** in Orlando, Florida on June 16, 2015.

                                        THOMAS B. SMITH
                                        United States Magistrate Judge

Copies furnished to:

    Presiding United States District Judge
    Counsel of Record